[No. 7987–5–I. Division One. March 31, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID NEAL GARDNER, *Appellant*.

*Lewis H. Nomura* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Chris Washington, Deputy,* for respondent.

RINGOLD, J.—This is an appeal from two judgments and sentences imposed on August 15, 1979, after the defendant, David Neal Gardner, had been convicted of two offenses of burglary in the second degree, and taking and riding a motor vehicle without permission of the owner.

The motor vehicle offense was alleged to have occurred on November 23, 1978, and the burglary on December 30, 1978. The defendant appeals, and both causes have been consolidated for our determination. We do not find that Gardner's assignments of error are sustained.

## BURGLARY CHARGE

With respect to the burglary, Gardner claims that the trial court erred in denying his motion to suppress evidence on the ground that his intoxication made his waiver of *Miranda* rights involuntary.

Gardner gained entry to a 7–11 store in Auburn, Washington, by lowering himself through a hole in the roof. He

gained access to the roof by means of a chain link fence that was just high enough that he could climb it, reach the edge of the roof, and pull himself up onto the roof. Entry into the store set off a silent alarm to which Officer Wales of the King County Police responded. When he arrived, other officers were on the scene and the store was still locked. Soon a K–9 unit arrived, entered the store and apprehended Gardner in the cooler area. Officer Wales arrested the defendant and read him his *Miranda* rights.

Officer Wales testified that he could tell that Gardner was intoxicated by the smell of alcohol, his demeanor, and his disheveled appearance. He also observed that Gardner could stand and walk by himself, appeared to understand the questions asked of him, spoke clearly, and read and initialed the police department rights form. Further, Officer Wales testified that Gardner recognized him from previous encounters and reported having walked to the 7–11 store from a party nearby.

Gardner testified that he did not remember much of what Officer Wales reported, and that he had drunk a fifth of vodka within 3 hours before his apprehension. Gardner points to this testimony, plus Officer Wales' testimony that he was marginally responsive during questioning and that he fell asleep. On the basis of this testimony Gardner claims that there was no substantial evidence for the trial court's determination that he voluntarily waived his *Miranda* rights.

 This court must review the record to determine whether substantial evidence supports the trial court's determination regarding a fundamental right. *State v. Young,* 28 Wn. App. 412, 624 P.2d 725 (1981). Intoxication alone does not render a statement involuntary, but may be a factor in deciding whether the defendant understood his rights and made a conscious decision to forego them. *See State v. Cuzzetto,* 76 Wn.2d 378, 457 P.2d 204 (1969). The trial court's conclusion as to the admissibility of the accused's statements will not be set aside on appeal if there is substantial evidence supporting the voluntariness of the

defendant's statement. *State v. McDonald,* 89 Wn.2d 256, 264, 571 P.2d 930 (1977).

■ The trial judge expressly stated that he did not believe Gardner's testimony as it related to the extent of his intoxication. The trial court was within its province to disbelieve the defendant's testimony. *In re Watson,* 25 Wn. App. 508, 610 P.2d 367 (1979). The remaining evidence that (1) the defendant could stand and walk, (2) recognized the officer, (3) climbed the fence and hoisted himself to the roof, (4) understood the officer, (5) read the rights form himself, and (6) initialed the form, all cumulate to substantial evidence supporting the trial court's determination regarding voluntariness of the waiver.

### TAKING AND RIDING A MOTOR VEHICLE WITHOUT PERMISSION OF THE OWNER

Gardner claims that the trial court erred in denying his pretrial motion to suppress evidence obtained as a result of his initial seizure and subsequent arrest.

As Officer Brown began following a speeding International Travelall, it pulled to the roadside and its two male occupants ran into the nearby woods. Officer Brown radioed for a stolen vehicle check and ascertained that the vehicle was just being reported stolen. As Officer Dines responded to a backup call he passed two male hitchhikers about six blocks from where the Travelall was parked. After learning from Officer Brown that two males had leaped from the Travelall and run into the woods, he returned to the hitchhikers who began running along the roadside as he approached. Officer Dines apprehended them and brought them back to the Travelall, where he matched their shoes with footprints in the snow. When the shoes matched the footprints, he arrested Gardner and his companion.

Relying upon *State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977), Gardner argues that he was "under arrest" from the moment he was detained by Officer Dines, that this detention was made without probable cause to make an arrest, that the arrest without a warrant was therefore unlawful,

and that all evidence flowing therefrom must be suppressed.

The State responds that an officer may stop someone of whom he has a well founded suspicion of criminal activity for investigative purposes and that this was an appropriate preliminary detention not amounting to an arrest but made upon a well founded suspicion of criminal activity for investigative purposes.

*Byers* is distinguishable. In *Byers*:

> The court that tried appellants found, as a . . . fact, that they "were arrested [when first stopped]". This finding, drawn from an assessment of live testimony we have not heard and undisputed by the parties at all stages of this litigation, is based on substantial evidence.

*Byers,* at 5. No argument was made that the stop in *Byers* was a permissible investigative stop. It is questionable whether *Byers* is of any import insofar as an investigative stop is concerned.

█ The concept in *Byers* that an arrest, requiring probable cause, occurs when a suspect's movement is fully restricted is not helpful in the investigative stop context. In his treatise LaFave discusses a case in which a defendant's movements were fully constricted and the court held that he had been arrested; he argues that such an analysis proves too much. 3 W. LaFave, *Search and Seizure* (1978). He states:

> To conclude that the officers' conduct must be viewed as an arrest from the outset because the defendant's restriction of liberty of movement was then complete and that no significant new restraint followed when the arrest was formally made, is to create a test which would cast doubt upon most stops. The typical stopping for investigation cannot be viewed as anything but a complete restriction on liberty of movement for a time, and if investigation uncovers added facts bringing about an arrest, the early stages of the arrest will not involve any new restraint of significance. . . . A stopping for investigation is not a lesser intrusion, as compared to arrest, because the restriction on movement is incomplete, but rather because it is brief when compared with arrest,

which (as emphasized in *Terry* [*v. Ohio,* 392 U.S. 1]) "is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows."

The better view, then, is that an otherwise valid stop is not inevitably rendered unreasonable merely because [the suspect's freedom to move was completely restricted].

3 W. LaFave, *Search and Seizure* § 9.2, at 29–30 (1978).

In later cases the "arrest" analysis has not been used to determine the permissibility of an investigative stop. In *State v. Walker,* 24 Wn. App. 823, 604 P.2d 514 (1979), for example, the court concluded that detention of the suspect in a police car while the victim came to identify him was reasonable. In *Walker,* at page 828, the court quoted from *State v. Serrano,* 14 Wn. App. 462, 466, 544 P.2d 101 (1975):

A temporary detention is justifiable under suspicious circumstances, to enable the policeman to determine whether to make an arrest, investigate further, or take no action if satisfied with the explanation given.

Another cogent example is *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980) in which the police questioned the driver of a parked car on the suspicion that the car was illegally parked. The officer went on to look into the purse of one of the passengers where he found illicit drugs, and the passenger was convicted of drug possession. The court assumed that the suspected parking violation justified interrogating the driver, but not the passenger. The court stated:

[A] stop based on a parking violation *committed by the driver* does not reasonably provide an officer with grounds to require identification of individuals in the car other than the driver, unless other circumstances give the police independent cause to question passengers.

*Larson,* at 642. Importantly, the court did not inquire into whether the detention constituted an arrest supported by probable cause, but rather whether the scope of the search was reasonably related to the justification for its inception.

The policy basis for this rule of reasonableness is best stated by the editors of the ALI *Model Code of Pre-Arraignment Procedure,* Commentary at 272 (Proposed Official Draft, 1975) (ALI *Model Code*):

> [I]n such circumstances, where a crime may have been committed and a suspect or important witness is about to disappear, it seems irrational to deprive the officer of the opportunity to "freeze" the situation for a short time, so that he may make inquiry and arrive at a considered judgment about further action to be taken. To deny the police such a power would be to pay a high price in effective policing and in the police's respect for the good sense of the rules that govern them.

In applying the reasonableness test, the fact that is most troubling here is the removal of the defendant from where he was hitchhiking six blocks to the Travelall. Such removal is generally beyond the scope of an investigative detention which provides that an officer may "order a person to remain in the officer's presence near such place [as he was stopped.]" ALI *Model Code* § 110.2(1). A comment explains:

> The concept is intended to be flexible. The officer should be able to order a person stopped on the street to his patrol car or to a nearby police call box. He is not, however, entitled to order the person to come to a police station or to go on a twenty-minute ride into the country or across town.

ALI *Model Code,* Commentary at 283.

Prompt efforts at identification by a victim or witness and determination of the culpability or innocence of the person detained are appropriate factors in considering the reasonableness of the investigative technique. LaFave states:

> If the matter is susceptible to quick resolution in this manner, then certainly resort to such procedures is to be preferred over other techniques which are likely to be less conclusive and to require more extended detention.

LaFave, at 43.

LaFave points out that transportation to the police sta-

tion is usually impermissible because it is not reasonably related to the investigation. LaFave, at 45. This is precisely the proposition that *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979) stands for. LaFave goes on to argue, however, that when the transportation of the suspect is reasonably related to the investigative purpose of the initial detention it is permissible. LaFave, at 44-45.

In the present case it is clear that the initial detention was justified by the circumstances—the report that two males had just run from a stolen vehicle and few hitchhikers were found in the area—and that their removal to the Travelall was in the furtherance of the investigation. The trial court did not err.

In view of our determination that Gardner's initial detention was a valid investigative stop we need not consider any other assignments of error.

The judgment and sentence of the trial court in both the burglary and taking of a motor vehicle without the permission of the owner are affirmed.

SWANSON and DURHAM, JJ., concur.

Reconsideration denied April 30, 1981.

Review denied by Supreme Court June 26, 1981.