[No. 10845-0-I.   Division One.   May 16, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN L. WILLIAMS, *Appellant.*

David R. Wohl of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Thomas R. Cherry, Deputy,* for respondent.

ANDERSEN, C.J.—

## FACTS OF CASE

The defendant, John L. Williams, appeals the judgment and sentence entered following a jury verdict finding him guilty of burglary in the second degree and theft in the first degree.

On the night of April 7, 1981, a lone officer in a marked police car was patrolling an unlighted residential neighborhood which had experienced approximately 15 burglaries within the preceding 2 months. The officer was within two blocks of a residence that was being burglarized when he received a radio report informing him that the silent alarm at the residence had been activated. The officer responded immediately.

As the officer approached the residence, and within 2 minutes of his having received the call, he saw an apparently unoccupied automobile parked on the street in front of it. As the officer drove up, and within roughly 100 feet from the residence, the headlights of the automobile came on and it began to drive off. The officer promptly pulled the vehicle over to the curb and ordered the driver (the defendant) to turn off the ignition. Within seconds, a backup officer arrived. With guns unholstered, the officers ordered the defendant out of his car. He was then handcuffed and placed in the back seat of one of the patrol cars.

The two officers then proceeded to investigate the premises and were aided by a canine unit which arrived shortly thereafter. The residence was found to be open, and its contents ransacked. A television set was found just outside the home in the rain. Approximately 10 minutes elapsed from the time the defendant was stopped and the time the officers verified the burglary.

The defendant, who had thus been caught in the act of leaving the scene of a burglary he was in the process of committing when interrupted by the officer's timely arrival,

was then placed under arrest. The defendant's automobile was impounded and following that, it was searched. Jewelry taken from the burglarized home was found under the driver's seat.

Prior to defendant's jury trial, he moved to suppress certain statements and physical evidence alleging that they were the fruits of an unlawful detention, arrest or impound. The trial court denied the motion. Subsequently, the jury returned its verdict finding the defendant guilty of both burglary in the second degree and theft in the first degree.

The defendant's appeal presents three issues.[1]

## ISSUES

ISSUE ONE. Did the trial court err when it denied the defendant's motion to suppress evidence based on the claim that it resulted from an unlawful detention or arrest?

ISSUE TWO. Was the impound and inventory of the defendant's automobile proper?

ISSUE THREE. Did the trial court err when at trial it admitted into evidence the defendant's custodial statements, without having first conducted a CrR 3.5 hearing?

## DECISION

ISSUE ONE.

CONCLUSION. The trial court did not err by denying the defendant's motion to suppress evidence. The brief investigative stop of the defendant was proper since it was based on a well founded suspicion that he was involved in criminal activity. Under the circumstances presented, the stop was conducted reasonably and the defendant's subsequent arrest was also proper since it was based on ample probable cause.

The defendant's principal contention is that his initial detention at the scene of the burglary was an illegal arrest not supported by probable cause that a crime had been

---

[1]Findings of fact and conclusions of law from the suppression hearing have now been entered and made a part of the record on appeal. The defendant's assignment of error directed to the absence of such findings has thus become moot and need not be further considered.

committed. We disagree.

■■ It is settled law that a police officer who has a reasonable suspicion based on objective articulable facts that an individual has committed or is committing a crime may make a brief investigatory stop of that person even though probable cause for an arrest may be lacking. *E.g., State v. Thompson,* 93 Wn.2d 838, 840–43, 613 P.2d 525 (1980); *State v. Selvidge,* 30 Wn. App. 406, 409, 635 P.2d 736 (1981). Although such a stop constitutes a "seizure" under the Fourth Amendment, the fact that a suspect's freedom to move is completely restricted does not transform a valid investigative detention into a traditional arrest with its requirement of probable cause. *State v. Wakeley,* 29 Wn. App. 238, 240, 628 P.2d 835 (1981); *State v. Gardner,* 28 Wn. App. 721, 725–26, 626 P.2d 56 (1981). As in other areas of constitutional jurisprudence, the reasonableness of such seizures depends ""'"on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."'" *State v. White,* 97 Wn.2d 92, 105, 640 P.2d 1061 (1982) (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 54 L. Ed. 2d 331, 98 S. Ct. 330 (1977)).

With respect to the grounds justifying the initial stop in the present case, our opinion in *State v. Clark,* 13 Wn. App. 21, 533 P.2d 387, *review denied,* 85 Wn.2d 1018 (1975) is instructive. In *Clark,* two Seattle police officers responded at night to a silent alarm triggered at a neighborhood residence. When they were 300 yards from the home, they observed the defendant on the sidewalk walking toward the residence. Suspecting his involvement in the possible burglary, the officers stopped the defendant, briefly questioned him, placed him in their patrol car and drove to the residence where they checked out the scene of the burglary. Their investigation showed that the house had indeed been burglarized and the defendant was then placed under arrest. *State v. Clark, supra* at 22.

In upholding the initial detention and subsequent arrest in *Clark,* we ruled as follows:

We hold that the officers in this case acted reasonably in detaining [the defendant] while they investigated the source of the alarm. The signal from the silent alarm device was a substantial indication that someone was forcing entry into the house. [The defendant's] appearance, conduct, and presence in the vicinity pointed directly toward his participation in the activation of the alarm. The police, acting for the citizenry, had the duty to investigate. This required [the defendant's] detention and an examination of the house. There was probable cause to arrest [the defendant] as soon as the fact of the burglary had been established.

It appears from the evidence that sometimes silent alarm–type devices give a signal even though there has not been an illegal entry. If that occurred in this case, the blame for [the defendant's] temporary detention could properly be attributed to his being where he was under suspicious circumstances, rather than upon an unwarranted intrusion upon his freedom by the police.

*State v. Clark, supra* at 23–24. *Accord, Seattle v. Urban,* 32 Wn. App. 634, 635–36, 648 P.2d 922 (1982).

Here, within some 120 seconds of the radio report, the patrolling officer observed the defendant's automobile parked on the street immediately in front of a private residence where a silent alarm had just been triggered. This was at night, in an unlighted area of a neighborhood in which some 15 residential burglaries had occurred during the preceding 2 months. There were no business establishments of any kind in the area and apparently no other vehicles on the street at the time. As the officer approached the scene in his marked patrol car, the headlights of the defendant's automobile suddenly flashed on and it began to drive off. At this point, the officer blocked the path of the departing vehicle.

When viewed in a commonsense fashion, as we must, these facts and circumstances clearly demonstrate that the officer had a well founded suspicion that the driver of the automobile may well have been involved in a burglary and, upon recognizing the officer's marked patrol car arriving on the scene, sought to flee.

As we have previously quoted with approval:

[I]n such circumstances, where a crime may have been committed and a suspect or important witness is about to disappear, it seems irrational to deprive the officer of the opportunity to "freeze" the situation for a short time, so that he may make inquiry and arrive at a considered judgment about further action to be taken. To deny the police such a power would be to pay a high price in effective policing and in the police's respect for the good sense of the rules that govern them.

Model Code of Pre–Arraignment Procedure § 110.2, commentary at 272 (Proposed Official Draft, 1975), *quoted with approval in State v. Gardner, supra* at 727. *Accord, Adams v. Williams,* 407 U.S. 143, 145–46, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). We hold that the officer's stop of the defendant for investigative purposes was reasonable and proper. *State v. Clark, supra*; *Seattle v. Urban, supra.*

When the defendant stopped his automobile, the lone officer exited, unholstered his service revolver and ordered the defendant to turn the ignition off. Within 30 to 45 seconds, another officer arrived as a backup. The defendant, who was advised that he was being detained for suspicion of burglary, was then handcuffed and placed in the back seat of a patrol car while the two officers immediately checked out the scene. The fact of the burglary was verified within minutes (the record suggests a total elapsed time of some 10 minutes). It is the defendant's contention that the officers' show of force coupled with the complete restriction of his freedom transcended an investigative detention and constituted a formal arrest with its attendant requirement of probable cause.

In disposing of contentions similar to the one at hand, this court in *State v. Gardner, supra,* distinguished the State Supreme Court's decision in *State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977) and quoted with approval from Professor LaFave's treatise on the Fourth Amendment:

The concept in *Byers* that an arrest, requiring probable cause, occurs when a suspect's movement is fully restricted is not helpful in the investigative stop context.

In his treatise LaFave discusses a case in which a defendant's movements were fully constricted and the court held that he had been arrested; he argues that such an analysis proves too much. 3 W. LaFave, *Search and Seizure* (1978). He states:

> To conclude that the officers' conduct must be viewed as an arrest from the outset because the defendant's restriction of liberty of movement was then complete and that no significant new restraint followed when the arrest was formally made, is to create a test which would cast doubt upon most stops. The typical stopping for investigation cannot be viewed as anything but a complete restriction on liberty of movement for a time, and if investigation uncovers added facts bringing about an arrest, the early stages of the arrest will not involve any new restraint of significance. . . . A stopping for investigation is not a lesser intrusion, as compared to arrest, because the restriction on movement is incomplete, but rather because it is brief when compared with arrest, which (as emphasized in *Terry* [*v. Ohio,* 392 U.S. 1]) "is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows."
>
> The better view, then, is that an otherwise valid stop is not inevitably rendered unreasonable merely because [the suspect's freedom to move was completely restricted].

3 W. LaFave, *Search and Seizure* § 9.2, at 29–30 (1978). *State v. Gardner,* supra at 725–26. *Accord, State v. Wakeley,* supra at 240–41.

■ Moreover, a police officer conducting an investigative stop may use that degree of force which is reasonable in light of all the circumstances. As a recent decision out of the Tenth Circuit explains:

> The courts that have addressed the issue of the reasonableness of a stop have focused on the question whether, due to the degree of force used by the police, the confrontation was in fact an arrest, not merely a stop. Under this analysis it is apparently assumed that at some point the show of force made by police conducting a stop becomes so great as to render it an arrest, regardless of the justification that may exist for the degree of force

used. Resolution of the question turns on the amount of force used to effect the stop: one level of force is permissible when there is probable cause for an arrest, but when the police have only a reasonable suspicion, only a more restricted use of force is permitted.

It seems to us that to focus the analysis in this manner diverts attention from the court's true concern in any Fourth Amendment case—whether the police conduct, in light of all the circumstances, was reasonable. We should not ask whether the force used was so great as to render it an arrest but, instead, whether the force used was reasonable. Whenever the police confront an individual reasonably believed to present a serious and imminent danger to the safety of the police and public, they are justified in taking reasonable steps to reduce the risk that anyone will get hurt. They should not be constrained in their effort to reduce the risk of injury or death simply because the facts known to them create a reasonable suspicion, but do not rise to the level of probable cause.

*United States v. Merritt,* 695 F.2d 1263, 1274 (10th Cir. 1982). We agree.

Accordingly, where the particular circumstances confronting a law enforcement officer are such as to reasonably require it, the use of a drawn weapon and/or handcuffs may in some cases be a reasonable component of a valid investigatory stop in order to ensure both the officer's and suspect's safety and to facilitate the prompt resolution of an investigation. *State v. Wakeley, supra* at 243. *See, e.g., United States v. Merritt, supra* at 1272–74; *United States v. Jackson,* 652 F.2d 244 (2d Cir.), *cert. denied,* 454 U.S. 1057 (1981); *State v. Taras,* 19 Ariz. App. 7, 504 P.2d 548, 551 (1972); *Tillman v. State,* 275 Ark. 275, 630 S.W.2d 5, 7–8 (1982).

Here we have the following facts: the stop occurred at night; the area was unlighted; the suspected felony, residential burglary, was a serious one; the first police officer who arrived at the scene was alone; the defendant turned on his car lights and started to leave the scene just as the officer drove up in his marked police car; there was a definite need to maintain the status quo while the residence

was checked out in order to promptly determine if a burglary had, in fact, occurred and if (as the officers testified) possible accomplices were in the area. Added to this is an additional factor which must be kept firmly in mind, and that is, as the United States Supreme Court has observed, "[a]ccording to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." *Adams v. Williams*, 407 U.S. at 148 n.3. We hold that based on the foregoing circumstances present in this case, it was not unreasonable for the officers to unholster their service revolvers and handcuff the defendant for a brief period of investigation as they did. *See State v. Wakeley*, 29 Wn. App. 238, 628 P.2d 835 (1981).[2]

Then on checking out the residence, and within minutes of the defendant's detention, the following additional facts were established. The door to the residence from which the silent alarm signal had emanated was open and the contents of the house had been ransacked. A television set (which appeared to be in good working order) was found just outside the house in the rain. In response to valid investigatory questioning, the defendant said he was looking for a friend's house but did not know the address.[3] Further, the defendant did not respond to the officer's question as to how his automobile happened to be parked in front of the burglarized residence.

---

[2]In *State v. Wakeley, supra*, the defendant's car was stopped on the belief he had been involved in a prior shooting incident. Three officers with unholstered revolvers ordered the defendant out of his car, frisked him, handcuffed him and instructed him to kneel on the ground behind the car. *State v. Wakeley, supra* at 239. The court held that under those circumstances the stop was a valid investigative detention, as opposed to an arrest, and the officers' actions were reasonable. *State v. Wakeley, supra* at 240–43. In particular, the court noted that "in view of the potential seriousness of the suspected activity, as well as the fact that the encounter took place at night, the handcuffing was reasonably related to ensuring the officers' and the suspects' safety." *State v. Wakeley, supra* at 243 n.1.

[3]When a police officer conducts a lawful investigative stop, he may require the suspect to identify himself and explain his activity in the area. *State v. Gluck*, 83 Wn.2d 424, 426, 518 P.2d 703 (1974).

In light of these facts, the police had probable cause to arrest the defendant for burglary, and they properly then did so. *See State v. Scott,* 93 Wn.2d 7, 10–11, 604 P.2d 943, *cert. denied,* 446 U.S. 920 (1980). Consequently, the trial court did not err when it denied the defendant's motion to suppress evidence based on the claimed unlawful detention and arrest.

ISSUE TWO.

CONCLUSION. The impound of the defendant's automobile was proper as part of the police "community caretaking function", and because the police also had probable cause to believe it was being used in the commission of a felony. The subsequent inventory search which uncovered the box of stolen jewelry under the driver's seat was proper as incident to a lawful impound.

After the defendant's arrest, the officers decided to impound the defendant's automobile. An inventory of its contents revealed a jewelry box, under the driver's seat, which was later identified as stolen. The defendant argues that the impound was improper and that the stolen jewelry box and jewelry should have been suppressed and not admitted as evidence.

██ The stop, as we have ruled, was lawful, as was the arrest. This left the vehicle blocking a private driveway on a residential street at night. The defendant was under arrest and would not be released from police custody until the following day. Nothing in the suppression hearing record suggests that there was anyone else who could have promptly arrived at the scene to attend to the automobile. Furthermore, the defendant was stopped as he was driving away from the scene of a burglary he had just committed and it was obvious from what was found at the scene that it was the prompt arrival of the police that had interrupted the burglar during the course of his crime. The police thus also had probable cause to believe that the defendant's automobile was being used in the commission of a felony and probably contained loot from the burglary, as it did. Consequently, an impound on that basis was also proper

and the inventory search was legally permissible. *See State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980); *State v. Simpson,* 95 Wn.2d 170, 189, 622 P.2d 1199 (1980); *State v. Roth,* 30 Wn. App. 740, 743, 637 P.2d 1013 (1981). *See also United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982).

ISSUE THREE.

CONCLUSION. Based on our independent review of the record, we conclude that the defendant's statements were made voluntarily after being advised of his constitutional rights and, therefore, that the trial court did not commit reversible error by not conducting a CrR 3.5 hearing.

■ It is the defendant's further contention that the trial court committed reversible error when it admitted certain custodial statements made by the defendant without first conducting a CrR 3.5 hearing concerning their voluntariness.

> While CrR 3.5 hearings are mandatory where the State seeks to use custodial statements of defendant, the failure to hold such a hearing is not prejudicial if the statements are voluntary and made after defendant has been properly advised of his constitutional rights. *State v. Vandiver,* 21 Wn. App. 269, 584 P.2d 978 (1978). The reviewing court may examine the record to see whether the statements were voluntary and made by defendant with full knowledge of his constitutional rights. *State v. Mustain,* 21 Wn. App. 39, 584 P.2d 405 (1978). A custodial statement is voluntary if it is not the product of duress, coercion, promise, or inducements of any kind. *State v. McKeown,* 23 Wn. App. 582, 596 P.2d 1100 (1979).

*State v. Renfro,* 28 Wn. App. 248, 253, 622 P.2d 1295 (1981), *aff'd,* 96 Wn.2d 902, 639 P.2d 737, *cert. denied,* ___ U.S. ___, 74 L. Ed. 2d 86, 103 S. Ct. 94 (1982).

Our review of the record satisfies us that the defendant made the custodial statements voluntarily after being properly advised of his constitutional rights and after acknowledging his understanding of those rights. Furthermore: the statements were admitted without defense objec-

tion as to voluntariness; the defendant testified on his own behalf; and the parties stipulated in open court to a waiver of all pretrial hearings, including an omnibus hearing. Any possible error was harmless. *See State v. Renfro, supra; State v. Darnell,* 8 Wn. App. 627, 630, 508 P.2d 613, *cert. denied,* 414 U.S. 1112 (1973).

Affirmed.

DURHAM, J., concurs.
RINGOLD, J., concurs in the result.

Reconsideration denied June 15, 1983.

Review granted by Supreme Court September 2, 1983.