[No. 13597–0–I.   Division One.   September 24, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. SEAN R. JOHNSTON, *Appellant.*

*Raymond H. Thoenig* and *Julie Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Daniel L. Gibson, Deputy,* for respondent.

SCHOLFIELD, J.—Sean R. Johnston appeals his juvenile court conviction for second degree burglary. He contends the trial court erred in failing to suppress physical evidence and his oral and written confessions because they were the product of an unreasonable seizure in violation of the Fourth Amendment. He also contends that the trial court erred in failing to suppress his oral and written confessions because they were obtained in violation of his *Miranda*

rights.[1] We agree that the police actions violated the Fourth Amendment; consequently, we do not reach the *Miranda* issue.

At approximately 7:30 a.m. on March 25, 1983, King County Police Officer Donald Anderson was driving past a south Seattle residence when he observed a Chevy hatchback, with the hatchback open, parked in the driveway and a reddish–haired person crouched down moving away from the car toward the house. The person appeared to be carrying something. Officer Anderson testified that from a "fleeting glance" it appeared that the person was trying to conceal himself. Officer Anderson made a U–turn and returned to the house. While doing so, he saw that the person had entered the house.

Officer Anderson testified that he had thought that a burglary was in progress because it was early in the morning, the vehicle was opened and parked in a driveway, and the person was carrying an object while attempting to conceal himself.

Officer Anderson radioed for additional units, which arrived in 2 or 3 minutes. He stationed the additional officers at the corners of the house, drew his revolver and knocked on the door. Three people came to the door and Officer Anderson ordered them outside at gunpoint. He placed them "under control" of the other officers and observed that none of them was the person that he had observed going into the house. He then looked into the house and observed what appeared to be the shadow of a man. He entered the house and discovered in a back bedroom the person he had seen earlier outside (later identified as David Johnston). He also observed a "gro light", a fluorescent tube fixture that appeared to be the object the person had been carrying when Officer Anderson first observed him. Officer Anderson removed David Johnston from the house, placed him in his patrol car, and advised him of his

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

*Miranda* rights. He questioned David about the light fixture. At first, David said that he did not know where the light came from, but after further questioning, he indicated he was carrying the light for his brother, Sean Johnston (the defendant).

At this point, Officer Anderson identified the people who had been ordered out of the house. A person named Rice identified himself as one of the renters of the house. Officer Anderson then approached Sean Johnston and asked him "who the light belonged to". Sean responded that it may have come from a burglary at the Boulevard Park School, located across the street. Officer Anderson immediately advised Sean of his *Miranda* rights and placed him in a patrol car.

Officer Anderson was unaware that a burglary had occurred at the Boulevard Park School. He radioed the precinct station and discovered that a burglary had occurred the night before. He then returned to Sean, reminded him that his rights were still in effect, and obtained from him an oral statement admitting his involvement in the burglary and stating that his friends and his brother were not involved. Approximately 20 minutes elapsed between the time that Officer Anderson placed Sean in the patrol vehicle and the time that he returned to him after verifying that a burglary had taken place.

Police officers then entered the house and removed two 4-foot hanging fluorescent "gro lights" and a fan. Sean was transported to the precinct station, where, once again, he was advised of his rights. He signed a waiver of his rights and a statement confessing to the burglary.

We first consider whether Sean waived or abandoned any challenge on appeal to the admission of the physical evidence in his trial.

The State contends that because Sean's counsel stated that he had no objection to the admission of the physical evidence when it was offered by the State, counsel, in effect, withdrew his motion to suppress the evidence. In support of its contention, the State cites *State v. Valladares,* 99

Wn.2d 663, 664 P.2d 508 (1983).

In *Valladares,* the court held that a constitutional challenge to the admission of evidence had been waived or abandoned because defense counsel had affirmatively withdrawn his pretrial motion to suppress. In this case, defense counsel did not affirmatively withdraw his motion to suppress the physical evidence, which had been noted several weeks before trial. In fact, at the start of the trial, counsel renewed the motion to suppress and argued it to the court. The trial judge denied the motion and did not indicate that any further objections would be necessary. When the State offered to admit the physical evidence at trial, Sean's counsel did state that he had no objection. He did so, however, only after establishing, by conducting voir dire of the State's witness, that the evidence had been seized *after* Officer Anderson ordered the occupants out of the house at gunpoint, entered the house to seize David Johnston and questioned Sean Johnston about the light fixture. Counsel thus established the groundwork for his argument that the evidence was the product of the arrest of David and Sean and the question to Sean about the light fixture, which was not preceded by *Miranda* warnings. We hold that under these circumstances, defense counsel did not withdraw his motion to suppress the evidence.[2]

We now consider whether Officer Anderson violated the Fourth Amendment when he ordered Sean out of the home at gunpoint and detained him in the front yard of the home.

The State concedes that probable cause to arrest did not exist when Officer Anderson ordered Sean and the other occupants out of the home.[3] The State contends, however,

---

[2]Regarding a similar issue, the Washington Supreme Court has recently held that defense counsel is not required to object to evidence at the time of its admission if the trial court has ruled on a motion in limine without indicating that further objections at trial are necessary. *State v. Kelly,* 102 Wn.2d 188, 685 P.2d 564 (1984); *State v. Koloske,* 100 Wn.2d 889, 895, 676 P.2d 456 (1984).

[3]Brief of Respondent, at 15.

that the suspicious circumstances justified an investigative stop under *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The State also contends that the actions of Officer Anderson did not exceed the proper limits of such a stop, citing *State v. Williams,* 34 Wn. App. 662, 663 P.2d 1368, *review granted,* 100 Wn.2d 1008 (1983) and *State v. Gardner,* 28 Wn. App. 721, 626 P.2d 56, *review denied,* 95 Wn.2d 1027 (1981).

In *Terry v. Ohio, supra,* the Court created a limited exception to the rule that a seizure of a person must be justified by probable cause to arrest. A person may be briefly seized, that is, a police officer may make an investigative stop, if articulable suspicion exists that the person has committed, is committing, or is about to commit, a crime. We agree that adequate grounds existed for an investigative stop in this case. David Johnston attempted to conceal himself from Officer Anderson while carrying an object from an open automobile into a home. We hold that Officer Anderson was justified in investigating his suspicion that a burglary was being committed.

We do not agree that all of the actions of Officer Anderson fell within the permissible scope of a *Terry* stop, however. The permissible scope of a *Terry* stop is dependent upon its underlying justification. The United States Supreme Court recently stated:

> The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. See, *e. g., United States* v. *Brignoni–Ponce,* 422 U. S. [873], at 881–882; *Adams* v. *Williams,* 407 U. S. [143], at 146. It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspi-

cion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Florida v. Royer,* 460 U.S. 491, 500, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983).

Officer Anderson could have verified or dispelled his suspicion by simply knocking on the door and waiting to see if anyone answered. When Sean Johnston and the two other young men answered the door, Officer Anderson could have asked them to identify themselves and to explain the circumstances. There was no justification for immediately ordering them out of the house at gunpoint. Because Officer Anderson did not use the least intrusive means reasonably available to verify or dispel his suspicion that a burglary was being committed, he violated the Fourth Amendment.

Although David Johnston's suspicious attempt to conceal himself from Officer Anderson justified a limited intrusion, there was no other evidence that a crime had been, or was being, committed. In *State v. Gardner, supra,* and in *State v. Williams, supra,* relied upon by the State, it was either known or extremely likely that a crime had taken place. In *Gardner,* two suspects were "stopped" who were hitchhiking six blocks away from where two men had fled a stolen vehicle. In *Williams,* a suspect was "stopped" as he attempted to drive away from a residence where a silent burglar alarm had been activated 2 minutes before.

Although we find that the conduct of Officer Anderson exceeded the permissible scope of an investigative stop and therefore violated the Fourth Amendment, we must consider whether the oral and written statements given by Sean Johnston and the physical evidence seized from the home nevertheless were admissible at trial.

The issue regarding Sean's statements is whether they should have been excluded as the fruit of the illegal arrest or were properly admitted because the connection between them and the unconstitutional conduct was sufficiently attenuated. *See Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Expressed another way, the issue is whether the statements resulted

from "'an intervening independent act of a free will" and were "sufficiently an act of free will to purge the primary taint of the unlawful invasion". *Wong Sun,* at 486.

The fact that *Miranda* warnings were given and understood is not sufficient by itself to purge the taint of an illegal seizure.[4] *Brown v. Illinois,* 422 U.S. 590, 601–02, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975); *Dunaway v. New York,* 442 U.S. 200, 216–17, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979). The Court has identified several factors to determine whether a confession was obtained in exploitation of an illegal seizure: "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct . . .". (Footnotes omitted.) *Brown v. Illinois, supra* at 603–04; *Dunaway v. New York, supra* at 218; *Taylor v. Alabama,* 457 U.S. 687, 690, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982).

In this case, as in *Brown, Dunaway* and *Taylor,* the length of time between the confession and the illegal seizure was short and there were no significant intervening circumstances. Also, in *Brown, Dunaway* and *Taylor,* the Court found that the conduct of the police was flagrant and purposeful because it was intended as an "expedition for evidence". *Brown,* at 605. In this case, although the suspicious circumstances justified an investigation, Officer Anderson continued to detain Sean and the other occupants and searched for evidence even after he had determined that no burglary was in progress. Under these circumstances, we conclude that the State failed to sustain the burden of proving that the statements were admissible.

Finally, the State contends that Sean had no standing to object to the admission of the physical evidence because the record does not indicate that he was a resident in the home. The State contends that in order to challenge a search on

---

[4]Again, we do not reach the issue of whether Officer Anderson's question to Sean regarding ownership of the light fixture should have been preceded by *Miranda* warnings.

Fourth Amendment grounds, a person must demonstrate an actual subjective expectation of privacy, which society recognizes as reasonable, citing *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981) and *State v. Jessup,* 31 Wn. App. 304, 641 P.2d 1185 (1982).

In *Christian,* the court held there was no reasonable expectation of privacy because Christian had earlier terminated his tenancy in premises searched without a warrant.

In *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980), our court held that Const. art. 1, § 7 confers automatic standing to seek suppression of contraband, the possession of which is an element of the offense charged.

*Simpson* does not resolve the issue of "standing" for Johnston because possession of the stolen property is not an element of second degree burglary.

*Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978) involved defendants' standing to challenge a search of an automobile in which defendants were riding as passengers. During the search, a rifle and shells were seized. Defendants did not own the automobile and did not claim ownership of the rifle or shells. At page 134, *Rakas* states:

> A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.

In *Rakas,* at 135, the Court rejected the holding of *Jones v. United States,* 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960), that (1) defendants have automatic standing to seek suppression of evidence, the possession of which is an essential element of the offense charged, and (2) "'anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress.'"

The *Rakas* Court held that defendants failed to show a "legitimate expectation of privacy" in the areas searched and therefore the warrantless search did not violate any Fourth Amendment rights of the defendants and their

motion to suppress was properly denied.

We do not have sufficient evidence in this record regarding the basis of Johnston's presence in the house to decide whether he had an actual expectation of privacy that was reasonable. For that reason, we do not decide the issue of admissibility of the physical evidence.

The oral and written confessions should have been suppressed. The conviction is reversed.

DURHAM, C.J., concurs.[5]

---

[5]Judge James A. Andersen was the third panel member hearing this case. After argument, he was appointed to the Supreme Court of Washington.