[No. 3440-II.   Division Two.   January 29, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE
J. BYRD, *Appellant.*

*William G. Knudsen,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for respondent.

REED, C.J.—Defendant Willie J. Byrd appeals from his convictions of first–degree burglary and second–degree assault. He assigns error to the trial court's finding of probable cause to arrest and its failure to dismiss the charge of first–degree burglary on the ground of insufficient evidence. Furthermore, defendant argues that the same assault was used both to elevate the degree of burglary and as the basis for his second–degree assault conviction thereby subjecting him to double jeopardy. We disagree with all of defendant's allegations of error and affirm his convictions.

The amended information filed against defendant charged him with first–degree burglary and second–degree assault in alleging the following:

I.

He, the said WILLIE J. BYRD, in the County of Kitsap, State of Washington, on or about the 28th day of November, 1977, with intent to commit a crime therein, did enter and/or remain unlawfully in a dwelling occupied by [the complaining witness], and, while in the dwelling or in immediate flight therefrom, did assault [the complaining witness]; contrary to the Revised Code of Washington 9A.52.020.

(Maximum penalty—not less than 20 years imprisonment and/or a fine of not more than $10,000.00).

II.

He, the said WILLIE J. BYRD, in the County of Kitsap, State of Washington, on or about the 28th day of November, 1977, did knowingly assault [the complaining witness] with intent to commit a felony; contrary to the Revised Code of Washington 9A.36.020.

(Maximum penalty—10 years imprisonment and/or $10,000.00 fine).

Except as to the question of identity of the victim's attacker, the facts submitted to the jury were not in dispute. Shortly after midnight on November 28, 1977, the complaining witness answered a knock at the door of her apartment. A man, later identified as defendant, asked whether she knew if Gary lived there. The witness responded she did not know anyone named Gary and defendant then inquired as to whether her husband was home. After finding he was not home the defendant insisted he would come in anyway, whereupon he forced his way through the doorway. The witness, in an effort to flee from defendant, tried to push her way past defendant and run from the apartment. She managed to reach the porch railing fronting her apartment when the defendant grabbed her around the waist and attempted to pull her back into the apartment. The witness screamed and defendant abandoned the struggle, leaving her at her doorway. She retreated into her apartment and locked the door.

Minutes later she heard another knock at her door. Although the person claimed to be a policeman she recognized the voice as that of defendant. She peered through a side window to verify her suspicion. The knocking continued. Suddenly defendant threw his body against the door in an effort to gain entry to the apartment. The witness ran through the rear exit of her apartment just before defendant broke through the front door. She ran screaming toward the manager's apartment as defendant gave chase. Defendant caught her just as she reached the door of her manager's apartment. As the defendant was grabbing at her

breasts and between her legs, the apartment manager opened his door. Defendant saw the manager and fled on foot into the night. The manager recognized defendant as one who had come to his apartment earlier that evening asking for Gary.

Subsequently, a call went out over the police radio which described the suspect as a black male, about 20 years of age, standing 5 feet, 6 inches, weighing 140 pounds, clean shaven, short afro, wearing a brown and tan plaid jacket. Within minutes an officer responding to the call saw defendant sitting at the bar of a local tavern a short distance from the scene of the attack. Defendant's appearance was generally the same as the broadcast description except that his plaid jacket was blue not brown. The officer proceeded to question defendant as to his identity and recent whereabouts. Defendant supplied information and informed the officer that he had been at the bar since 9 p.m., claiming that the bartender could verify that fact. When defendant was asked if he had left the tavern at any time, he became nervous and admitted leaving the tavern a half–hour earlier to escort a girl home, returning about 5 minutes before the officer arrived. The defendant was then asked whether he would accompany the officer to the scene of the attack for the purposes of identification. The defendant was unwilling but was informed he had no choice. After arriving at the apartment complex the defendant was positively identified by the victim and two other witnesses.

Defendant's first assignment of error challenges the officer's probable cause to arrest defendant after encountering him in the bar. Citing *State v. Hilliard,* 89 Wn.2d 430, 573 P.2d 22 (1977), defendant argues that an imperfect description cannot provide probable cause for arrest, and that it was incumbent upon the officer to seek verification of defendant's story before any arrest. The dictum cited in *Hilliard,* however, is collateral to the issue before us. *Hilliard* concerned whether a defendant should be given the *Miranda* warning after an investigatory stop but before

being placed under arrest. *See State v. Creach,* 77 Wn.2d 194, 461 P.2d 329 (1969). The defendant in *Hilliard* had given the officers a plausible reason for his presence in the area, but at trial he sought to exclude evidence of his reluctance to supply the arresting officer with information to verify his story. The court declared that at the point the defendant furnished the officers with a plausible reason for his presence it was unable to say that the officers *must* have concluded that the defendant committed an assault. It was not, in the court's words, "an incident where the officers had made a decision to make an arrest, but delayed doing so to avoid a *Miranda* warning." *State v. Hilliard, supra* at 435–36. Thus the issue was not the mere existence of probable cause, but whether it so clearly existed that it could be said the officers were conducting a custodial interrogation without the formality of an arrest.

The only issue before this court is the existence of probable cause. Our Supreme Court has stated that probable cause to arrest without a warrant arises

"where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed."

*State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979), quoting from *State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974); *State v. Todd,* 78 Wn.2d 362, 474 P.2d 542 (1970). In examining the reasonableness of the arresting officer's actions, consideration must be given to his special experience and expertise. *State v. Fricks, supra; State v. Cottrell,* 86 Wn.2d 130, 542 P.2d 771 (1975); *State v. Todd, supra.* Here the arresting officer not only had defendant's physical description but found him in close proximity in time and distance to the crime site. The officer was entitled to couple these facts with defendant's nervousness and his admission he had been absent from the bar at the time of the attack. In view of these facts, we cannot say it was unreasonable for the arresting officer to conclude defendant

had committed the crime. *Cf. State v. Braun,* 11 Wn. App. 882, 526 P.2d 1230 (1974) (wherein the court found probable cause to arrest on the basis of physical description, physical proximity to the scene of the crime, and defendant's absence from home at the time the crime was committed). We do not find it significant that the suspect's description did not match defendant in every particular. *See State v. Todd, supra.*

■ Defendant next assigns error to the lower court's failure to sustain his challenge to the sufficiency of the evidence. After the close of the prosecution's case in chief defendant made a motion to dismiss the charge of first–degree burglary. In considering the issues presented in this assignment of error, it is important to note that no error is assigned to the instructions given the jury. Consequently, the instructions become the law of the case and the appropriateness of those instructions to the circumstances of this case is not at issue. *State v. Robinson,* 92 Wn.2d 357, 597 P.2d 892 (1979); *State v. Reid,* 74 Wn.2d 250, 444 P.2d 155 (1968); *State v. Queen,* 73 Wn.2d 706, 440 P.2d 461 (1968). Our only concern at this point is whether the lower court erred in denying defendant's motion to dismiss.

■ Under defendant's proffered construction of RCW 9A.52.020(1),[1] the assault providing the aggravating circumstance for first–degree burglary must occur *within* the burglarized dwelling. Assuming arguendo that defendant's reading of the first–degree burglary statute is correct, the only issue before this court is whether sufficient evidence was presented to the jury from which it could find defendant guilty. A challenge to the sufficiency of the State's evidence against defendant admits the truth of that evidence

---

[1]RCW 9A.52.020(1) provides:

"Burglary in the first degree. (1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) *assaults any person therein.*" (Italics ours.)

and all inferences reasonably drawn therefrom. The evidence must be interpreted most strongly against the defendant and in a light most favorable to the State. *State v. Robinson, supra; In re Wilson,* 91 Wn.2d 487, 588 P.2d 1161 (1979); *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978); *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971).

The thrust of defendant's argument is that because the attack on the complaining witness occurred outside her dwelling and in front of the manager's apartment it cannot supply the assault required in RCW 9A.52.020(1). Defendant's construction of RCW 9A.52.020(1) requires the assault to occur within the burglarized dwelling. While overlooking testimony to the contrary, defendant erroneously argued to the trial court that the only entry defendant made into the witness' dwelling was on defendant's return visit to the apartment in which he broke down the apartment door. Apparently accepting defendant's version of the facts, the trial court denied defendant's motion to dismiss on the basis of a construction of RCW 9A.52.020(1) not calling for the assault to occur within the burglarized dwelling. In our review of the record, however, we find there is sufficient evidence from which the jury could find the burglary and its aggravating assault occurred in the victim's first encounter with defendant. That fact obviates the need to address defendant's proposed construction of RCW 9A.52-.020(1) and establishes the basis of the jury's finding of guilt.

■ That an assault occurred when defendant struggled with the complaining witness is beyond question. The element of first-degree burglary mistakenly thought to be missing was whether defendant *entered* or was entering the victim's dwelling before or during the attack. On direct examination the complaining witness testified as follows:

Q Explain what happened shortly after midnight on that day.

A  Someone knocked on the door so I answered it. And there was a black guy standing there and he asked me if I knew where Gary lived.

Q  What did you say?

A  Then he asked me if Gary was here. I said no, I didn't know any Gary. And he asked me if my husband was home. I said no. Then he said he would come in anyway. *So he pushed his way through the door. And I tried to push my way out.* And then he grabbed me, so I grabbed on to the railing so—

Q  How did he grab you?

A  Around my waist with both hands.

Q  Okay. What did you do?

A  *I held on to the railing so he couldn't pull me in.* And I screamed. And he says, "My God," and walked away, leaving the apartments.

(Italics ours.) Her testimony gives rise to, at the minimum, an inference that the defendant had either entered or was effecting an entrance to her apartment at the time the assault took place. That action in combination with the requisite intent and the assault constitutes first–degree burglary. Although the evidence of entry or entering is not conclusive, the persuasiveness of that evidence is within the jury's province and not a matter for consideration by the trial judge in a motion to dismiss. *See State v. Randecker, supra.* Consequently, it was unnecessary for the trial court to consider defendant's construction of RCW 9A.52.020(1). A trial court's correct ruling will not be disturbed on appeal merely because it was based on an incorrect or insufficient reason. *Pannell v. Thompson,* 91 Wn.2d 591, 589 P.2d 1235 (1979).

Defendant's final assignment of error concerns an allegation of double jeopardy allegedly occurring because defendant's convictions of first–degree burglary and second–degree assault arose from the single attack on the victim just outside the manager's apartment. Defendant complains that the same assault cannot provide the element of aggravation in the charge of first–degree burglary as well as the basis for an independent conviction of second–degree assault.

However, despite defendant's reasonably persuasive argument and the recent dictum in *State v. Johnson,* 92 Wn.2d 671, 677, 600 P.2d 1249 (1979), defendant's oversight regarding the consequences of his first attack on the victim at her apartment door provides the answer to this assignment of error. As noted above, the State presented a prima facie case of first–degree burglary in its proof of the circumstances surrounding the first attack at the victim's door. The assault elevating the crime to burglary in the first degree was the struggle in the victim's doorway. The State further proved a prima facie case of second–degree assault (with intent to rape) from defendant's second attack upon the victim just outside the manager's apartment door.

Contrary to defendant's argument, separate assaults were involved in the charge of first–degree burglary and second–degree assault. Accordingly, defendant's allegation of double jeopardy is not supported by the evidence. Because no error is assigned to the jury instructions, none is considered.

Finding no merit to defendant's assignments of error, we affirm.

PEARSON and PETRIE, JJ., concur.