[Nos. 4772–1–II; 4908–2–II.   Division Two.   June 8, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES CROSS, *Appellant.*

*Frank Ladenburg,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Michael Johnson, Deputy,* for respondent.

REED, C.J.—Defendant James Cross appeals the denial of his pretrial motions for a separate trial and the suppression of evidence in connection with his conviction of first degree robbery. We find no error and affirm the conviction.

At 4:30 a.m. on July 29, 1979, Officer Erickson of the Puyallup Police Department received a radio report that a local restaurant had just been robbed. Although the report contained no further details, the officer positioned himself near a major intersection, hoping to intercept a possible suspect vehicle. Approximately 2 minutes after receiving the radio dispatch he observed a van coming from the general direction of the victimized restaurant. Because there were no other vehicles on the streets, the officer decided to follow the van and subsequently observed what he felt to be evasive maneuvers on its part.

The van eventually turned into the driveway of a residence northeast of Puyallup. Officer Erickson pulled into the same driveway seconds later, but did not arrive in time to see anyone leave the vehicle. As the officer walked toward the van, Charles Cross came out of the residence. Upon being questioned, Charles stated that the van belonged to James Cross (his brother) and that James had been out driving that evening. He also stated that James might have run into the woods because he was afraid of being arrested for drunk driving. Officer Erickson then asked if he could look inside the van. Charles answered affirmatively and, without further prompting, opened the side door. From his position outside the vehicle, the officer observed a short barreled shotgun and a brown plaid coat. He then sent Charles to find James and returned to his police car where he learned in a follow–up radio report the

clothing and weapon utilized by one of the robbery suspects matched the description of the items he had observed in the van.

The two brothers were subsequently located and placed under arrest after being advised of their *Miranda* rights. Detective Archer and Deputy Bisson of the Pierce County Sheriff's Department thereafter arrived on the scene and obtained written consent from Charles and his wife to search their residence. This search resulted in the discovery of $250 hidden in a Bible and a stolen shotgun. About this same time, Officer Erickson walked down the road to a location where he had previously lost sight of the van for a few seconds. He eventually found in a roadside ditch a black vinyl bag containing paper currency, a handgun and other evidence connected with the robbery of the restaurant.

A short time later the police discovered that the brown plaid coat had disappeared from the van. Deputy Bisson advised Charles that his wife would probably be arrested for possession of the stolen shotgun if the coat was not recovered. Acting under this implicit threat, Charles led the deputy to the coat in a field behind the residence. After the coat was located, Charles contacted Detective Archer and voluntarily made incriminating statements to the effect that all the stolen money was in the black vinyl bag and that he had thrown the bag over the top of the van into the ditch while driving the vehicle.

An omnibus hearing was held prior to trial. At this hearing the court denied James' and Charles' respective motions for separate trials. It was also determined that all physical evidence discovered by the various officers was admissible except for the brown plaid coat which Charles had been coerced into retrieving for Deputy Bisson. The court did conclude, however, that Officer Erickson could testify as to his observation of the coat at the time Charles first exposed the interior of the van. The court further held that all Charles' statements were admissible with the exception of his initial remarks to Officer Erickson regarding James'

whereabouts on the morning of the robbery. Subsequent to this hearing, the case proceeded to a jury trial where both brothers were convicted of first degree robbery. Defendant James Cross now appeals his conviction in this court.

On appeal James first assigns error to the trial court's failure to grant his motion for a separate trial. He concedes that the granting or denial of such motions is generally entrusted to the sound discretion of the trial court. *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968); *State v. Barry*, 25 Wn. App. 751, 611 P.2d 1262 (1980). However, he contends that separate trials were mandatory in the instant case. Specifically, he argues that severance was mandated by CrR 4.4(c)(1)[1] because he was severely prejudiced by the introduction into evidence of Charles' incriminating out–of–court statements to Detective Archer (*i.e.*, Charles' admission that he was driving the van and that he threw the bag containing money into the roadside ditch).

■ James' reliance on CrR 4.4(c)(1) is misplaced. The plain language of the rule provides that its applicability is limited to situations where a codefendant's out–of–court statement *refers* to the defendant moving for severance.[2]

---

[1]CrR 4.4(c)(1) provides:
**"Severance of Defendants.**
"(1) A defendant's motion for severance on the ground that an out–of–court statement of a codefendant referring to him is inadmissible against him shall be granted unless:
"(i) The prosecuting attorney elects not to offer the statement in the case in chief.
"(ii) Deletion of all references to the moving defendant will eliminate any prejudice to him from the admission of the statement."

[2]This limitation on the applicability of CrR 4.4(c)(1) is entirely consistent with the rule's underlying purpose. The rule was adopted to avoid the constitutional problem encountered in *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), where the Supreme Court held that a defendant is deprived of his confrontation rights under the Sixth Amendment if he is incriminated by the pretrial confession of a codefendant who does not take the stand at trial. *State v. Wheeler,* 95 Wn.2d 799, 631 P.2d 376 (1981); *State v. Herd,* 14 Wn. App. 959, 546 P.2d 1222 (1976). The *Bruton* problem arises only in situations where an out–of–court statement by a codefendant expressly, or by direct inference, refers to and incriminates the fellow defendant. *State v. Vannoy,* 25 Wn.

See footnote 1. Here, the allegedly prejudicial statements by Charles did not refer to James in any manner whatsoever. Therefore, severance was not mandatory under CrR 4.4(c)(1), and the issue simply becomes whether the trial court abused its discretion in failing to grant separate trials. Our holding in *State v. Ferguson*, 3 Wn. App. 898, 479 P.2d 114 (1970), where we upheld a joint trial under almost identical facts, indicates that the present court acted entirely within its discretion in this regard.

James next argues that the trial court erred in admitting Officer Erickson's testimonial description of the brown plaid coat after the coat itself had been suppressed because of the coercive tactics of Deputy Bisson.[3] Although the officer's verbal description was ostensibly based on his observation of the coat when Charles first opened the door of the van, James maintains that the testimony was improper because at least some of the descriptive detail was obtained subsequent to the coercive conduct by the other officer. *See State v. Melrose*, 2 Wn. App. 824, 470 P.2d 552 (1970). This argument is unpersuasive. Officer Erickson's testimony regarding the coat consisted solely of the fact that it was light brown with dark brown lines. There is no indication that this limited description was based on anything other than his initial observations.

In his final assignment of error James contends both the coat (*i.e.*, the verbal description thereof), and the shotgun should have been suppressed due to the impropriety of Officer Erickson's observation of these items when Charles opened the side door of the van. Specifically, James claims that the officer's activity constituted a search which was constitutionally invalid because of the absence of a warrant. He further contends that his brother's apparent consent to

App. 464, 610 P.2d 380, *remanded on other grounds,* 93 Wn.2d 1027 (1980). Only then does the inability to cross-examine the codefendant become constitutionally prohibited. *State v. Gibson,* 3 Wn. App. 596, 476 P.2d 727 (1970).

[3]We have serious doubts concerning the ruling suppressing the jacket. Because the State has conceded the point, we do not address those concerns.

this activity was ineffective, and did not alleviate the requirement of a warrant, because the officer was aware that the vehicle did not belong to Charles and had no reasonable grounds to believe that anyone other than the true owner had authority to permit a search of its contents. *United States v. Matlock,* 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974).

■ We disagree with James' characterization of Officer Erickson's activity as a search. It is undisputed that the officer had a well founded suspicion that the occupants of the van had been engaged in criminal activity which justified his presence on the driveway and his brief investigative questioning of Charles. *Brown v. Texas,* 443 U.S. 47, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979). It is also acknowledged that during this encounter the officer asked Charles if he could look inside the van. However, upon receiving an affirmative response, he did not enter the vehicle or in any manner direct Charles to do so. On the contrary, the trial court's unchallenged findings of fact indicate that the exposure of the interior of the van was an entirely unprompted act on the part of Charles. Therefore, the officer observed the items in the van in plain view from a position where he had a lawful right to be. Under these circumstances, his observations did not amount to a search in the constitutional sense and there is no basis for the application of the exclusionary rule. *State v. Seagull,* 95 Wn.2d 898, 901, 632 P.2d 44 (1981); *State v. Glasper,* 84 Wn.2d 17, 20, 523 P.2d 937 (1974).

For the stated reasons, we affirm.

PETRIE and WORSWICK, JJ., concur.