[No. 5969–3–III.   Division Three.   January 15, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
LAWRENCE SAMSEL, *Appellant.*

David W. Henault, John B. Hancock, and Henault & Hancock, for appellant (appointed counsel for appeal).

Donald C. Brockett, Prosecuting Attorney, and Allen M. Gauper and Charles P. Schumacher, Deputies, for respondent.

GREEN, C.J.—John Samsel and Raymond Singleton were tried together and convicted of first degree robbery. Samsel appeals, claiming the court erred in refusing his motions to (1) sever the trial, (2) dismiss the charges, and (3) suppress evidence. We affirm.

On March 15, 1983, shortly after 11 a.m., Spokane police officers received a radio dispatch that an armed robbery had occurred on north Mayfair and the two perpetrators had been chased on foot in an easterly direction by the victim, who was armed with a shotgun. The robbers were described as a Puerto Rican male wearing light colored clothing and a Negro male, 5 feet 11 inches to 6 feet tall, heavy build, wearing a black shirt, dark pants and an ivory tooth necklace. A second dispatch described the Puerto Rican to be about 6 feet 3 inches tall, wearing a flowered shirt and green pants.

Officer Geraldine Lauman, who heard the dispatch, was in the area. Within a mile from the robbery location, she saw a black man matching the dispatch description getting into what she first thought was a yellow station wagon. The vehicle began moving and she pulled behind it, at that time noting it was a yellow cab. Officer Lauman decided to stop the vehicle to investigate.

Almost simultaneously, an unmarked police car occupied by Officers Brian Breen and Robert Bailor approached and blocked the cab from the front. They had also received the dispatch, deduced the robbers were on foot and would attempt another mode of transportation, and began looking for cabs. When they saw the cab, they also observed it contained two passengers: a Caucasian male and a Negro male

wearing dark clothing. The Negro male "scrunched" down as if to hide.

Both officers exited their vehicle with guns drawn. As they approached the cab, the Negro male reached down, appearing to stuff something under the floor mat. He also reached into his jacket. Fearing he might have a gun, the officers ordered the men out of the cab and frisked them.

The Caucasian male was defendant Samsel. As he exited the cab, Officer Breen noticed a bag of marijuana, a black leather jacket and a gun holster on the floor of the backseat in front of where Samsel had been sitting. Also, when the Negro male, defendant Singleton, exited the cab, the officers noted he was wearing a necklace with a tooth ornament. The officers decided the victim should be summoned to identify the two men. Both defendants were handcuffed and placed in back of the patrol cars.

The victim was transported to the location of the cab. He identified Singleton but was unable to identify Samsel until trial. The two men were told they were under arrest and were searched. Black tape reportedly used to tie the victim was found in Singleton's pocket. Several 50–cent pieces, reportedly stolen, were found on Samsel. A box of ammunition was also found in the back of the cab where Samsel had been sitting. Scales, later determined to be stolen, and a gun were found along the escape route.

After defendants were transported to the police station, Singleton voluntarily admitted he committed the robbery. Samsel, however, told the officers he hitched a ride with Singleton when his car broke down. These statements were admitted at trial. Samsel later testified he went with Singleton to the victim's home to buy marijuana, an altercation occurred and he ran grabbing the marijuana and a gun in its holster to protect himself. The cabdriver stated that Samsel hailed the cab while Singleton jumped over a nearby fence, handing "an armful of things" to Samsel. Singleton did not testify at trial.

First, Samsel contends the court erred in refusing to sever the trials based on the admission of Singleton's con-

fession.[1] He relies on CrR 4.4(c), which states:

> (1) A defendant's motion for severance on the ground that an out–of–court statement of a codefendant referring to him is inadmissible against him shall be granted unless: . . .
>
> (ii) Deletion of all references to the moving defendant will eliminate any prejudice to him from the admission of the statement.

Samsel acknowledges that statements made by Singleton referring to "we" or "the two of us" were excised and only Singleton's statement that he, Singleton, would "be crazy not to admit that [he] did the robbery . . ." was admitted. Samsel takes the position admission of that statement prejudiced him because all the evidence placed him at the scene of the crime with Singleton and he could not effectively argue his version of the incident to the jury.

By its terms, CrR 4.4(c) is mandatory only when a codefendant's statement *refers* to the defendant. In *State v. Cross,* 32 Wn. App. 193, 196 n.2, 646 P.2d 171 (1982), the court observed:

> The rule was adopted to avoid the constitutional problem encountered in *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), where the Supreme Court held that a defendant is deprived of his confrontation rights under the Sixth Amendment if he is incriminated by the pretrial confession of a *codefendant who does not take the stand at trial. State v. Wheeler,* 95 Wn.2d 799, 631 P.2d 376 (1981); *State v. Herd,* 14 Wn. App. 959, 546 P.2d 1222 (1976).

(Italics ours.) In *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), a codefendant's statement was admitted that he *and the defendant* had committed the crime. The Court held since the codefendant became one of the defendant's accusers, defendant's right

---

[1]As noted by the trial court, the motion to sever, having been brought the day of trial, was untimely which constitutes a waiver. *See State v. Harris,* 36 Wn. App. 746, 748–49, 677 P.2d 202 (1984). However, in light of the fact the motion was set by agreement between defense counsel and the prosecutor and the trial court went on to address the merits of the motion, in the interests of justice this court will consider the issue. *See* RAP 2.1.

to confrontation was violated when he was denied cross examination. *Bruton* and CrR 4.4(c) have consistently been interpreted to apply only in situations where the out–of–court statement, expressly or by direct inference, refers to or incriminates the fellow defendant. *See State v. Grisby,* 97 Wn.2d 493, 506–07, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211 (1983); *State v. Cross, supra; State v. Vannoy,* 25 Wn. App. 464, 610 P.2d 380, *remanded on other grounds,* 93 Wn.2d 1027 (1980). Since the statement here that Singleton committed the robbery did not directly or inferentially incriminate Samsel, neither *Bruton* nor CrR 4.4(c) apply.

The issue, then, is whether the court abused its discretion in refusing to grant separate trials. It is notable that Singleton's counsel, who joined in the motion to sever, refused to indicate at the time the motion was presented whether Singleton intended to take the stand. Had he done so, any *Bruton* problem might have been eliminated. *See State v. Grisby, supra; State v. Myers,* 86 Wn.2d 419, 423, 545 P.2d 538 (1976). "The burden is on the moving party to come forward with sufficient facts to warrant the exercise of discretion in his favor." *State v. Grisby, supra* at 507. Nor did counsel for Samsel make an offer of proof concerning Samsel's version of the facts. Not offering this information to the trial court comes dangerously close to invited error concerning the issue as presented and runs afoul of the rule that the trial court must be afforded an opportunity to correct possible error before this court will consider the issue. Under the circumstances, the court obviously could not rule on the motion to sever after the evidence had been presented.

Separate trials have never been favored in this state. *State v. Grisby, supra.* "The administration of justice would be greatly burdened if required to accommodate separate trials in all cases where multiple parties have participated in a criminal offense and where one or more have confessed to its commission." *State v. Ferguson,* 3 Wn. App. 898, 906, 479 P.2d 114 (1970), *review denied,* 78

Wn.2d 996 (1971). Under closer facts than these, it has been held there was no error in refusing to sever. *See State v. Kimball,* 14 Wn. App. 951, 958, 546 P.2d 1217 (1976) and *State v. Herd,* 14 Wn. App. 959, 546 P.2d 1222 (1976) (statements that codefendant had "passed off" a knife to "another" where witness thought defendant had stabbed victim); *State v. Ferguson, supra* (codefendant's confession to committing robbery under facts very similar to those here). Consequently, there was no abuse of discretion.

Samsel's other claimed errors involve whether the arrest was proper. Relying on *State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977), Samsel claims he was arrested when the cab he was in was blocked by a police vehicle. This "arrest", he asserts, was unlawful because it was not based on probable cause. In the alternative, he argues if the stop was not an arrest, it nevertheless was not justified by the facts. Consequently, he contends it was error to deny his motion to dismiss the charges or suppress the evidence against him. We disagree.

Historically, a seizure was considered to be an arrest which could be effectuated only on probable cause. *State v. Williams,* 102 Wn.2d 733, 736–37, 689 P.2d 1065 (1984). *Byers* states an arrest occurs the moment a suspect is not free to go. The court in *Williams,* at 741 n.5, announced this rule was too broadly stated because it blurs the distinction between an arrest and an investigative stop, first authorized by *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and to that extent *Byers* was overruled. *Terry* held a suspect may be detained for questioning even though probable cause to arrest is absent. *See also State v. Wakeley,* 29 Wn. App. 238, 240, 628 P.2d 835 (1981).[2]

---

[2] The *Terry* stop falls between an arrest which "'is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows", *State v. Wakeley, supra* at 240 (quoting *Terry v. Ohio, supra* at 1), and questioning without restraint which some courts have held does not implicate the Fourth Amendment at all. *See State v. Montgomery,* 31 Wn. App. 745, 751–52, 644 P.2d 747 (1982); *State v. Wakeley, supra* at

The ultimate test for either an arrest or investigative stop is reasonableness, which involves weighing the degree of invasion of personal liberty against the public interest to be advanced. *State v. Hobart,* 94 Wn.2d 437, 443, 617 P.2d 429 (1980); *State v. Ferguson, supra* at 901. *State v. Williams, supra* at 739, outlines the governing inquiry:

First, was the initial interference with the suspect's freedom of movement justified at its inception? Second, was it reasonably related *in scope* to the circumstances which justified the interference in the first place?

Was the stop justified? The court in *Williams,* at 739, reiterated the requirement that

[t]o justify an intrusion, the police officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* at 21.

The stop here was based on the following facts: A robbery had been committed by one Negro male wearing dark clothing and one Puerto Rican male; the perpetrators were chased east from the location and were last seen on foot; investigating officers operating independently in two separate cars saw defendants in a cab within 1 mile east of the location; one of them ducked when he saw the officers' car.

Samsel argues the facts were not sufficient to justify suspicion because one of the officers testified the cab was stopped based on a "hunch" the robbers would be on foot and would seek a cab to escape; Singleton's actions in ducking down were not in response to recognizing the officers' vehicle, which was unmarked; and Samsel is neither Puerto Rican nor was he wearing the clothes described by the radio dispatch.

While an inchoate hunch is insufficient to justify a stop, circumstances which appear innocuous to the average person may appear incriminating to a police officer in light of past experience. The officer is not required to ignore that

240; *State v. Young,* 28 Wn. App. 412, 419–20, 624 P.2d 725 (1981) (reserving question to later determination).

experience. *State v. Cottrell,* 86 Wn.2d 130, 132–33, 542 P.2d 771 (1975); *State v. Todd,* 78 Wn.2d 362, 367, 474 P.2d 542 (1970); *State v. Poe,* 74 Wn.2d 425, 428–29, 445 P.2d 196 (1968); *State v. Byrd,* 25 Wn. App. 282, 286, 607 P.2d 321 (1980). Further, reasonableness is measured not by exactitudes, but by probabilities.

> An officer need not have knowledge of evidence sufficient to establish guilt beyond a reasonable doubt, but only reasonable grounds for suspicion coupled with evidence of circumstances to convince a cautious or disinterested person that the accused is guilty. . . .
> . . . The practical considerations test does not necessarily require exact identity and detailed description of the car and person involved. Reasonable similarity, especially when coupled with other apparently incriminating circumstances may permit a reasonable inference of identity.

(Citations omitted.) *State v. Berkins,* 2 Wn. App. 910, 914–15, 471 P.2d 131 (1970) (quoting *State v. Bellows,* 72 Wn.2d 264, 266, 432 P.2d 654 (1967)). *See also State v. Cottrell, supra; State v. Baxter,* 68 Wn.2d 416, 420–21, 413 P.2d 638 (1966); *State v. Byrd, supra* at 286–87.

Here Officer Lauman and Officers Breen and Bailor independently came to the same conclusion that the fact defendants were in a cab within a short distance from the robbery was suspicious. Officer Breen testified:

> A cab is oftentimes used by individuals who have committed crimes to escape the scene of the crime. Oftentimes, we will even check with the cabs to check to see if they are sending a cab to an area where someone is on foot. It's a common means of escape.

The officer further stated:

> Everyone knows what a detectives' [*sic*] car is and how they are and everyone would know that my partner and I together in the car with a "D" license plate and a police antenna sticking up out of the back that we are police officers.

The officer summarized his reasons for stopping the cab:

> After observing Mr. Singleton, who was a black male, and Mr. Samsel, and observed Mr. Singleton scrunch down in

the cab as if he was hiding, because of the short time period after the robbery and the location, a short distance from where the robbery had taken place, two individuals who fit the description of the perpetrators in the cab, we made the decision to stop the cab and detain the occupants for further investigation.

These are sufficient articulable facts to reasonably justify the stop. *Cf. State v. Todd, supra* (probable cause even though vehicle did not match radio description); *State v. Harper,* 33 Wn. App. 507, 510, 655 P.2d 1199 (1982) (proximity to crime site); *State v. Byrd, supra* (description and close proximity to crime sites); *State v. Walker,* 24 Wn. App. 823, 604 P.2d 514 (1979) (suspicion reasonable even though radio dispatch described clothing different from defendant's); *State v. Washington,* 4 Wn. App. 856, 859, 484 P.2d 415 (1971) (description, proximity to crime site and evasive action); *State v. Knutson,* 3 Wn. App. 507, 476 P.2d 124 (1970) (probable cause where robbers in getaway car were reasonably within description and were arrested within minutes of the robbery).

Was the stop reasonably related in scope to the circumstances? Three factors have been considered relevant to this inquiry: "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *State v. Williams, supra* at 740.

The purpose of the stop in this case, unlike the one in *Williams,* was directly related to detaining and investigating the defendants for possible involvement in the robbery. When the officers first saw the cab, it was in the process of leaving the vicinity and was temporarily stopped at a stop sign. They did not act unreasonably in blocking it to prevent their investigation from being prematurely terminated. *See United States v. Patterson,* 648 F.2d 625, 633 (9th Cir. 1981).

The crime reported was an armed robbery. When the officers approached defendants, Singleton ducked down in

the seat and reached in his coat pocket. The officers testified they asked defendants to exit the cab and frisked them to protect the cabdriver as well as themselves.

A determination of the reasonableness of an officer's intrusion depends to some degree on the seriousness of the apprehended criminal conduct. An officer may do far more if the suspected misconduct endangers life or personal safety than if it does not.

*State v. McCord,* 19 Wn. App. 250, 253, 576 P.2d 892 (1978) (citing *State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243, *cert. denied,* 423 U.S. 891 (1975)). Under the circumstances, the officers' actions were justified by a reasonable belief that the defendants were armed and dangerous. *See State v. Swaite,* 33 Wn. App. 477, 481, 656 P.2d 520 (1982); *State v. Smith,* 9 Wn. App. 279, 281, 511 P.2d 1032 (1973); *State v. Berkins, supra* at 917.

The officers' investigation was further aided by radio dispatches received from another officer at the victim's home. Information was relayed that marijuana had been stolen. Marijuana and a gun holster were in plain view next to where Samsel had been seated. The tooth ornament was observed on a chain around Singleton's neck. It was after obtaining this further information that the officers decided to summon the victim to identify the defendants. In our view, the officers had probable cause at this point to arrest the defendants. In any case, the scope and intensity of the stop could properly be enlarged with receipt of the additional information. *State v. Walker, supra* at 828.

Although the length of time for the stop was not calculated, the testimony reflects defendants were apprehended within a short time after the robbery, the victim arrived within 10 to 12 minutes after being summoned to identify the defendants, and, within a short time thereafter, defendants were formally arrested. In light of these facts, we find the scope of the investigation to be reasonable. *See State v. Wakeley, supra.*

Affirmed.

McINTURFF and THOMPSON, JJ., concur.