[No. 14596–7–I.   Division One.   August 19, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL THORNTON, *Appellant*.

*Michael Thornton*, pro se, and *Anthony Savage, Jr.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Ruth A. Robinson, Deputy*, for respondent.

SWANSON, J.—Michael Thornton appeals the superior court judgment and sentence for three counts of first degree robbery, RCW 9A.56.200(1)(a) and (b) and 9A.56.190, while armed with a deadly weapon, RCW 9.95.040, and a firearm, RCW 9.41.025. He claims that the denial of the motion to suppress evidence obtained as a result of the police car stop and arrest was error. We affirm.

Shortly before 3:30 a.m. on February 12, 1984, two men armed with handguns robbed the Lake Union Cafe in Seattle of about $5,000 and its four employees of personal items. The employees, who were tied up with tape and flex–

cuffs, freed themselves soon after the men left and called the police. At about 3:30 a.m. the Seattle Police Department radio broadcast the robbery report.

Based upon the information transmitted over the police radio and their observations of a car speeding down Interstate 5 near the robbery scene at that time as well as their subsequent observations of its occupants when they pursued and caught up with the car, two Seattle police officers, who were in an unmarked police car without sirens or flashing lights, requested that a marked patrol car pull the suspects' car over. After the car was pulled over and its occupants were ordered out of the car, one of the police officers saw in plain view in the suspects' car additional evidence which, when verified with police at the robbery scene, gave him probable cause to arrest the suspects, one of whom was Thornton. In a nonjury trial Thornton was found guilty of three counts of first degree robbery while armed with a deadly weapon and a firearm.

The issue is whether the car stop was a temporary investigative detention which was justified by specific, articulable facts so that suppression of the evidence seized as a result of the stop and subsequent arrest was not required. Thornton has assigned error to the trial court's conclusions of law 1 through 6 entered in denying the motion to suppress evidence:

I.
Sgt. Paul Meyer and Detective Henry Everette had specific and articulable reasons to stop the suspect vehicle, based on the reports from the police radio; the observation of the suspect vehicle, including its speed, its location, the time of the night, and the absence of other traffic; and their observations of the occupants, which confirmed there were two males in the car, they were not Black, they wore bulky clothing and one was wearing glasses.

II.
The officers were justified in seeking the support of additional vehicles in order to effect the stop.

III.
The show of force was appropriate for a temporary

detention since the occupants were suspected of armed robbery.

### IV.

The officers could properly require the occupants to exit the vehicle.

### V.

Observations as to the glove, duct tape and plastic flex cuffs were made from outside the vehicle; the items were there to be seen, and the view was not more than is allowed by an investigatory stop. These items gave the officers probable cause to arrest the occupants.

### VI.

Defendant's motion to suppress is denied.

■ Under the federal constitution's Fourth Amendment and the Washington Const. art. 1, § 7, as a general rule warrantless searches and seizures are per se unreasonable. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, 2032 (1971); *State v. Williams,* 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). Thus the State has the burden to prove that a particular warrantless search or seizure falls within an exception to the warrant requirement. *State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). Here the trial court concluded that the police first made a temporary investigative stop based upon specific, articulable reasons and then an arrest based upon probable cause. The evidence justifies these conclusions. *State v. Williams,* 96 Wn.2d 215, 221, 634 P.2d 868 (1981).

■ Under *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),

[t]he narrow scope of the *Terry* exception [to the warrant requirement] permits an officer to briefly detain, for limited questioning, a person whom he reasonably suspects of criminal activity and to frisk the person for weapons if he has reasonable grounds to believe the person to be armed and presently dangerous. The suspicion of dangerousness must focus particularly on the individual searched, not simply upon the area in which he is found.

(Citations omitted.) *State v. Smith,* 102 Wn.2d 449, 452, 688 P.2d 146 (1984).

While the scope of a permissible *Terry* stop will vary

with the facts of each case, an investigative detention must last no longer than is necessary to effectuate the stop's purpose. Moreover, the least intrusive investigative methods reasonably available must be used to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer,* 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319, 1325 (1983); *State v. Williams,* 102 Wn.2d at 738.

In evaluating an investigative stop, a court must inquire as to the following:

First, was the initial interference with the suspect's freedom of movement justified at its inception? Second, was it reasonably related *in scope* to the circumstances which justified the interference in the first place?

*Williams,* 102 Wn.2d at 739 (citing *Terry,* at 19–20); *see United States v. Sharpe,* ___ U.S. ___, 84 L. Ed. 2d 605, 105 S. Ct. 1568, 1573 (1985). To justify the initial interference with the suspect's freedom, the police officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* at 21, quoted in *Williams.* As for the scope of the intrusion, three factors in determining whether an interference with liberty is so substantial that its reasonableness depends upon probable cause are (1) the stop's purpose, (2) the amount of physical intrusion upon the suspect's liberty, and (3) the length of time that the suspect is detained. *Williams,* at 740.

Here immediately after the Lake Union Cafe robbery, the police radio reported that the robbers were in their thirties, probably Caucasian, and armed with pistols. Further, one robber was described as being 5 feet 9 inches to 5 feet 10 inches and about 165 to 170 pounds and as wearing a short bulky parka and a stocking cap and a bandanna over his face. The other robber was described as being 5 feet 8 inches or 5 feet 9 inches and as wearing blue tinted glasses and a stocking cap and a pink scarf over his face. The police radio further reported that one glove had been found.

Sergeant Paul Meyer and Detective Henry Everette of

the Seattle Police Department, who were heading south on Interstate 5 in an unmarked police van when they heard the robbery report broadcast, pulled over at the Boylston freeway on–ramp, the closest southbound freeway entrance from the Lake Union Cafe, which was about 11 blocks away. Within a short time they saw a car containing two men enter the freeway at more than 70 miles per hour while still accelerating. There was little freeway traffic at that hour, and this was the only car to use that freeway on–ramp during that time. The officers followed the car because of its high rate of speed. After catching up with the car, they saw two light–skinned male occupants; one was wearing a bulky parka and the other was wearing glasses. The officers then requested that a marked patrol car stop the car. Two state patrol cars drove up behind the police van and shortly thereafter a marked Seattle patrol car pulled the car over at the south end of Boeing field. No police car pulled in front of the suspects' car. Two or three officers had weapons drawn as they approached the car and ordered the suspects out of the car.

First, Thornton's contention in his pro se brief that no specific, articulable facts warranted a temporary detention in this case is without merit. Based upon the police radio robbers' descriptions and their observations of the car and its occupants, Sergeant Meyer and Detective Everette knew of specific, articulable facts which, together with reasonable inferences therefrom, justified a temporary investigative stop. Their reasonable suspicion was based upon their observation of the suspects' car entering the freeway in close proximity to the robbery scene in the early morning when there was little traffic and at an excessive rate of speed and their subsequent observation of the car's occupants as being two light–skinned males, one of whom was wearing a bulky jacket and the other of whom was wearing glasses. Cf. State v. Byrd, 25 Wn. App. 282, 286–87, 607 P.2d 321 (1980) (probable cause based upon physical description and close proximity to crime site plus additional facts); State v. Washington, 4 Wn. App. 856, 859,

484 P.2d 415 (1971) (probable cause based upon facts including description, proximity to crime site and suspect car's high rate of speed); *State v. Knutson,* 3 Wn. App. 507, 507, 476 P.2d 124 (1970) (probable cause based upon description of robbers and getaway car and close time proximity to robbery).

Further, the police actions did not exceed the proper purpose and scope of a *Terry* stop so as to be justified only if supported by probable cause sufficient to arrest the suspects. First, unlike in *Williams,* 102 Wn.2d at 740, the purpose of the stop here was directly related to detaining and investigating the defendant in connection with the robbery. *See State v. Samsel,* 39 Wn. App. 564, 572, 694 P.2d 670 (1985). After their car was pulled over and the suspects were ordered out of the car, they were frisked for weapons and an officer asked Thornton for his driver's license.

Moreover, the amount of intrusion was not unreasonable in light of the alleged crime. An investigatory stop is not transformed into an arrest because an officer orders the suspect out of a car. *Pennsylvania v. Mimms,* 434 U.S. 106, 109–12, 54 L. Ed. 2d 331, 98 S. Ct. 330, 332–33 (1977); *United States v. White,* 648 F.2d 29, 36–40 (D.C. Cir.), *cert. denied,* 454 U.S. 924 (1981).

Further, the police officers' drawn guns in these circumstances did not convert the stop into an arrest requiring probable cause since the police had a legitimate fear of danger based upon the armed robbery report and the officers' consequent belief that the suspects were armed.[1] *Williams,* 102 Wn.2d at 740 n.2; *State v. Smith,* 9 Wn. App. 279, 280–81, 511 P.2d 1032, *review denied,* 82 Wn.2d 1013 (1973); 3 W. LaFave, *Search and Seizure* § 9.2, at 30 (1978). *See United States v. Danielson,* 728 F.2d 1143,

---

[1] No hard and fast rule governs the display of weapons in an investigatory stop. Rather, the court must look at the "nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, [and] the reaction of the suspect to the approach of police . . . all [of] which bear on the issue of reasonableness." (Citation omitted.) *United States v. Harley,* 682 F.2d 398, 402 (2d Cir. 1982); *accord, United States v. Nargi,* 732 F.2d 1102, 1106 (2d Cir. 1984).

1145, 1147 (8th Cir.) (armed robbery suspects in car), *cert. denied,* 105 S. Ct. 300 (1984); *United States v. Diggs,* 522 F.2d 1310, 1314 (D.C. Cir. 1975) (armed robbery suspects in car), *cert. denied sub nom. Floyd v. United States,* 429 U.S. 852 (1976); *People v. Ulrich,* 83 Mich. App. 19, 268 N.W.2d 269, 272 (1978) (armed robbery suspects in car). *See also United States v. Coades,* 549 F.2d 1303, 1305 (9th Cir. 1977) (drawn guns in stop of armed robbery suspects); *Unites States v. Russell,* 546 F.2d 839, 840–41 (9th Cir. 1976) (drawn weapons in car stop). The use of guns in connection with a stop is permissible where the police reasonably believe that they are necessary for their protection. *United States v. Aldridge,* 719 F.2d 368, 371 (11th Cir. 1983); *United States v. Merritt,* 695 F.2d 1263, 1273 (10th Cir. 1982), *cert. denied,* 461 U.S. 916 (1983).

Last, the stop's length of time was minimal.[2] As soon as Sergeant Meyer, standing next to the small foreign–made car, saw in plain view[3] on the driver's seat and on the passenger side of the car's floor the glove, duct tape, plastic flex–cuffs and hood and checked by radio transmission with officers at the robbery scene regarding the glove found and kind of tape used on the victims, he informed the suspects that they were under arrest for suspicion of robbery. *Cf.*

---

[2]*See United States v. Sharpe,* ___ U.S. ___, 84 L. Ed. 2d 605, 105 S. Ct. 1568, 1574–76 (1985) (upheld 20–minute car stop where police acted diligently and suspect's actions contributed to the added delay about which he later complained). *Cf. United States v. Montoya de Hernandez,* ___ U.S. ___, 87 L. Ed. 2d 381, 105 S. Ct. 3304 (1985) (upheld in case involving detention at international border where Fourth Amendment balance between governmental interests and individual's privacy right leans heavily toward government, 16–hour incommunicado detention by customs officers of suspected alimentary canal cocaine smuggler before seeking a warrant).

[3]Thornton's contention in his pro se brief that the evidence that Sergeant Meyer saw in plain view in the suspects' car must be suppressed because the stop was an illegal arrest is unsupported by a citation to authority, *State v. Kroll,* 87 Wn.2d 829, 837–38, 558 P.2d 173 (1976). Nevertheless, in light of our determination here that the stop was an investigative detention that was based upon specific, articulable facts, his contention is without merit. *See State v. Seagull,* 95 Wn.2d 898, 901–02, 632 P.2d 44 (1981).

*Danielson,* at 1145, 1147.

At the time of the arrest, Sergeant Meyer had probable cause, which exists

> "where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed."

*State v. Fricks,* 91 Wn.2d 391, 398, 588 P.2d 1328 (1979) (quoting *State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974)); *accord, State v. Helfrich,* 33 Wn. App. 338, 340, 656 P.2d 506 (1982). Moreover, prior to when Sergeant Meyer had probable cause and informed Thornton that he was under arrest, Thornton was not arrested such that probable cause was required.[4] A

> person is under arrest for constitutional purposes when, by a show of authority, his freedom of movement is restrained.

*State v. Holeman,* 103 Wn.2d 426, 428, 693 P.2d 89 (1985) (citing *United States v. Mendenhall,* 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, *reh'g denied,* 448 U.S. 908 (1980)). Here the *Terry* stop exception to the warrant requirement permitted the officers, in the absence of probable cause to arrest, briefly to detain and question Thornton, who was reasonably suspected of armed robbery.[5] *See*

---

[4]As Thornton's appellate counsel conceded, the definition of an arrest set forth in *State v. Byers,* 88 Wn.2d 1, 6, 559 P.2d 1334 (1977) and relied upon in the defendant's appellate brief was overruled by the court in *State v. Williams,* 102 Wn.2d 733, 741 n.5, 689 P.2d 1065 (1984). *See State v. Samsel,* 39 Wn. App. 564, 569, 694 P.2d 670 (1985); *see also State v. Wakeley,* 29 Wn. App. 238, 240, 628 P.2d 835, *review denied,* 95 Wn.2d 1032 (1981).

Whether an arrest has occurred "depends on all of the surrounding circumstances, including the extent that freedom of movement is curtailed and the degree and type of force or authority used to effectuate the stop." The question is whether, under all of the circumstances, "a reasonable person would conclude he was under arrest." (Citations omitted.) *United States v. Patterson,* 648 F.2d 625, 632 (9th Cir. 1981).

[5]"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. . . . [I]t may be the

*Samsel*, at 569.

A brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest.

*United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982), *cert. denied*, 459 U.S. 1211 (1983). Here we have determined that the interference with Thornton's liberty was not excessive under the circumstances.

If the officers' articulable suspicion justifying the *Terry* stop had not risen to the level of probable cause to believe that Thornton had committed the robbery, Thornton would have been able to continue on his way. However, when Sergeant Meyer's reasonable suspicion rose to the level of probable cause and he informed Thornton that he was under arrest, Thornton's freedom of movement was then restrained by a show of authority and he was under arrest for constitutional purposes. *Holeman. See Williams*, at 741 n.5.

The judgment is affirmed.

SCHOLFIELD, A.C.J., and COLEMAN, J., concur.

Review denied by Supreme Court November 8, 1985.

---

essence of good police work to adopt an intermediate response." *Adams v. Williams*, 407 U.S. 143, 145, 32 L. Ed. 2d 612, 92 S. Ct. 1921, 1923 (1972), quoted in *Patterson*, at 632 n.19. *See Samsel*, at 569 n.2.