FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2013 OCT 28 AM 9: 39

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 68422-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD IVAN KOHLWES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 28, 2013 |
| | ) | |

LAU, J. — After a routine license plate check revealed Edward Kohlwes's failure to transfer title to his car, a sheriff's deputy stopped the car to investigate. Kohlwes showed signs of drug intoxication and admitted coming from a known drug house. A drug dog "alerted" to the car's exterior to indicate the presence of drugs. A later search of the car's console disclosed about two grams of methamphetamine. Kohlwes challenges the trial court's denial of his suppression motion, arguing he was unlawfully detained while deputies waited 15 minutes for a drug dog. Because specific articulable facts supported an objectively reasonable belief that the car contained a controlled substance, Kohlwes's detention was lawful. We affirm his possession of a controlled substance conviction.

## FACTS

The trial court's findings of fact entered following the CrR 3.6 hearing are unchallenged on appeal and establish the following events. Around 2 A.M. on May 31, 2010, Snohomish County Sheriff's Deputy Ryan Phillips drove to an address in Everett, Washington to "check on a known drug house."[1] Verbatim Report of Proceedings (June 17, 2011) at 5 (VRP). According to Deputy Phillips, deputies monitored the house because of frequent criminal activity. "It's a problem house that we still, to this day, deal with very frequently. Stolen cars, warrants, lots of drug use, lo[t]s of neighborhood complaints and 911 calls concerning this house." VRP at 8. Deputy Phillips "frequently" made arrests "[f]or controlled substances." VRP at 16.

Approximately one block from the drug house, Deputy Phillips saw a man driving towards him. Following a routine procedure, he entered the license plate into a database. He learned that the car had been sold without transfer of title. Under RCW 46.12.650(7), a purchaser's failure to apply for a transfer of title within 45 days after delivery of the vehicle constitutes a misdemeanor. Deputy Phillips requested that Deputy Randall Murphy stop the driver for the title transfer offense.

Deputy Phillips drove to Deputy Murphy's location and contacted the driver, Edward Kohlwes. While speaking with Kohlwes about the traffic offense, Deputy Phillips noticed signs of intoxication. Kohlwes's eyes were jumping and moving back and forth. He was sweating even though it was a cold and rainy night. Kohlwes also displayed signs of "dry mouth." VRP at 12. Based on these observations and Deputy

---

[1] According to Kohlwes, the deputy asked him, "You just came from Sven's house, the meth dealer." VRP at 32.

Phillips's training and experience, "it was quite obvious he was under the influence of some sort of intoxicants." VRP at 10. Deputy Phillips testified that he had "nightly" experience with intoxicated individuals. VRP at 12.

Deputy Phillips asked Kohlwes where he was coming from. Kohlwes said, "Sven's house." VRP at 15. Deputy Phillips knew that Sven was the owner of the nearby drug house. He asked Kohlwes what he was doing at Sven's house. Kohlwes said he and Sven were "talking about woodworking." VRP at 15. Kohlwes answered "no" when Deputy Phillips asked him if "there was anything illegal in the vehicle." VRP at 13. Deputy Phillips asked Kohlwes for consent to search the car, and he declined.

Deputy Phillips requested a canine team. Within 15 minutes, Officer Coleman Langdon of the Lynnwood Police Department arrived with his canine partner, Buddy. Officer Langdon "applied" Buddy to the car's exterior while Kohlwes waited outside. VRP at 13. Buddy alerted to the presence of contraband. Deputy Phillips impounded the car but did not arrest Kohlwes. He issued no traffic citation.

Deputy Phillips obtained and executed a search warrant. While searching the passenger compartment of Kohlwes's car, he found a glass pipe, a hypodermic needle, and a plastic bag containing a marble-sized methamphetamine rock. A laboratory test confirmed that the rock contained methamphetamine. A sheriff's deputy later arrested Kohlwes when he tried to retrieve his car from the impound lot.

The State charged Kohlwes with possession of a controlled substance. The trial court denied Kohlwes's motion to suppress the physical evidence seized from his car. Following a bench trial on stipulated facts, the court convicted Kohlwes as charged.

ANALYSIS

Kohlwes contends that he was unlawfully detained when Deputy Phillips requested a canine team after initiating the traffic stop. He does not challenge the traffic stop.[2] He argues that Deputy Phillips unlawfully enlarged the scope of the stop, since no facts gave rise to a reasonable, articulable suspicion that he possessed a controlled substance in his car.[3] He claims that the court erred in ruling that he was "detained for a reasonable amount of time, while a K-9 Unit was deployed." We review the trial court's legal conclusion de novo. State v. Duncan, 146 Wn.2d 166, 171, 43 P.3d 513 (2002). We hold that the court properly denied Kohlwes's suppression motion.

In general, police officers must obtain a warrant before intruding into a person's private affairs. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7; State v. Day, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). But "[o]fficers may briefly, and without warrant, stop and detain a person they reasonably suspect is, or is about to be, engaged in criminal conduct." Day, 161 Wn.2d at 895. A Terry[4] stop is a narrowly-drawn exception to the warrant requirement. A Terry stop "is permissible if the officer can 'point to specific and articulable facts which, taken together with rationale inferences from those facts, reasonably warrants the intrusion.'" State v. Snapp, 174 Wn.2d 177, 197, 275 P.3d 289 (2012) (quoting Terry, 392 U.S. at 21). "The State bears the burden of

---

[2] Below, Kohlwes asserted the stop was pretextual. We consider this claim abandoned because he failed to argue it on appeal and assigned no error to the relevant conclusion of law.

[3] To the extent Kohlwes waived this argument by failing to raise it below, we exercise our discretion to review the issue under RAP 2.5(a).

[4] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

establishing an exception to the warrant requirement." State v. Potter, 156 Wn.2d 835, 840, 132 P.3d 1089 (2006).

Reasonable, articulable suspicion requires a "substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). "[R]easonableness is measured not by exactitudes, but by probabilities." State v. Samsel, 39 Wn. App. 564, 571, 694 P.2d 670 (1985). "While certainly an 'inchoate hunch' is not sufficient to justify a stop, experienced officers are not required to ignore arguably innocuous circumstances that arouse their suspicions." State v. Santacruz, 132 Wn. App. 615, 619-20, 133 P.3d 484 (2006). The reviewing court "must evaluate the totality of circumstances presented to the investigating officer." State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). The court takes into account an officer's training and experience when determining the reasonableness of a Terry stop. State v. Mercer, 45 Wn. App. 769, 774, 727 P.2d 676 (1986).

The development of reasonable, articulable suspicion entitles the officer to "'maintain the status quo momentarily while obtaining more information.'" State v. Williams, 102 Wn.2d 733, 737, 689 P.2d 1065 (1984) (quoting Adams v. Williams, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)). "[A] detaining officer may ask a moderate number of questions . . . to confirm or dispel the officer's suspicions without rendering the suspect 'in custody' for the purposes of Miranda."[5] State v. Heritage, 152 Wn.2d 210, 218, 95 P.3d 345 (2004).

"If the results of the initial stop dispel an officer's suspicions, then the officer must end the investigative stop." State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003).

---

[5] Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

But "[t]he scope of an investigatory stop . . . may be enlarged or prolonged as required by the circumstances if the stop confirms or arouses further suspicions." State v. Guzman-Cuellar, 47 Wn. App. 326, 332, 734 P.2d 966 (1987). Any further detention requires "articulable facts" from which an officer may reasonably infer criminal activity. State v. Tijerina, 61 Wn. App. 626, 629, 811 P.2d 241 (1991).

Here, at approximately 2 A.M., deputies stopped Kohlwes for a misdemeanor traffic violation. Deputy Phillips witnessed Kohlwes drive within one tenth of a mile of a known drug house, just minutes before he was stopped. Deputy Phillips knew that the house facilitated "lots of drug use," and that it was the site of frequent arrests "[f]or controlled substances." VRP at 8, 16. Immediately on contact, Deputy Phillips noticed Kohlwes's "obvious" intoxication.[6] Kohlwes told him he had just come from Sven's house, where he and Sven talked about woodworking. That location was well known to law enforcement as a "known drug house." VRP at 5. Deputy Phillips reasonably suspected Kohlwes was driving while under the influence of drugs. We conclude the totality of these circumstances reasonably justified extending the initial detention to investigate the possible presence of drugs in Kohlwes's car.

For the first time on appeal, Kohlwes argues that (1) the methamphetamine seized from his car was the fruit of an unconstitutional canine sniff and (2) the State's search warrant affidavit inadequately established the canine's reliability. RAP 2.5(a)(3) provides that a "manifest error affecting a constitutional right" may be raised for the first time on appeal. For the first time in his reply brief in this court, Kohlwes asks us to

---

[6] Kohlwes does not challenge the court's conclusion stating, "Upon contacting the Defendant, Deputy Phillips developed the reasonable suspicion that the Defendant was driving under the influence of a controlled substance." CP 101.

review the search warrant issue as a manifest error affecting a constitutional right under RAP 2.5(a)(3).[7] To benefit from RAP 2.5(a)'s manifest constitutional error exception, "[t]he defendant has the initial burden of showing that (1) the error was 'truly of constitutional dimension' and (2) the error was 'manifest.'" State v. Grimes, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (quoting State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). Because Kohlwes makes no showing to satisfy his burden, the issue is waived.

We affirm.

WE CONCUR:

---

[7] Kohlwes does not contend that the canine sniff issue constitutes a manifest error affecting a constitutional right.